1  Amanda C. Sommerfeld (SBN 185052)
   asommerfeld@jonesday.com
2  JONES DAY
   555 South Flower Street, Fiftieth Floor
3  Los Angeles, CA 90071.2300
   Telephone: +1.213.489.3939
4  Facsimile: +1.213.243.2539

5  Koree B. Wooley (SBN 294489)
   kbwooley@jonesday.com
6  JONES DAY
   4655 Executive Drive, Suite 1500
7  San Diego, CA  92121.3134
   Telephone: +1.858.314.1200
8  Facsimile: +1.844.345.3178

9  Renee Pauline T. Perez (SBN 339045)
   rpperez@jonesday.com
10 JONES DAY
   555 California Street, 26th Floor
11 San Francisco, CA 94104.1503
   Telephone: +1.415.626.3939
12 Facsimile: +1.415.875.5700

13 Attorneys for Defendant
   UNITED AIRLINES, INC.
14

15              **UNITED STATES DISTRICT COURT**

16     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

17

18 JOHN R. SCHOLZ, III, an individual, and          **CASE NO. 3:21-CV-09561**
   KEVIN E. BYBEE, an individual, on behalf
19 of themselves and others similarly situated,

20                 Plaintiffs,                      **DEFENDANT UNITED AIRLINES,**
                                                    **INC.'S NOTICE OF REMOVAL OF**
21        v.                                        **ACTION PURSUANT TO 28 U.S.C.**
                                                    **§§ 1331, 1332, 1441, 1446; 29 U.S.C.**
22 UNITED AIRLINES, INC., a Delaware corp.,         **§ 1132**
   and DOES 1 through 10, inclusive,
23
                   Defendant.
24

25

26

27

28

---

**DEFENDANT UNITED'S NOTICE OF REMOVAL**
                                              **CASE NO. _3:21-CV-09561**

1       **TO THE CLERK OF THE ABOVE ENTITLED COURT:**

2           PLEASE TAKE NOTICE THAT United Airlines, Inc. ("United" or "Defendant") hereby

3   removes this matter from the California Superior Court, San Mateo County, to the United States

4   District Court for the Northern District of California, San Francisco Division, pursuant to 28 U.S.C.

5   §§ 1331, 1332, 1441, and 1446, and 29 U.S.C. § 1132.  The grounds for removal are as follows:

6                               **I.        BACKGROUND**

7                       **Compliance with Statutory Requirements**

8           1.      On November 5, 2021, Plaintiffs John R. Scholz, III and Kevin E. Bybee

9   ("Plaintiffs") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of

10  California for the County of San Mateo titled *John R. Scholz, III, an individual, and Kevin E. Bybee,*

11  *an individual, on behalf of themselves and others similarly situated, v. United Airlines, Inc. and*

12  *Does 1 through 10, inclusive*, San Mateo Superior Court Case No. 21-CIV-06029 (the "Action").

13          2.      In the Complaint, Plaintiffs assert individual and class claims for: (1) violations of

14  California Labor Code §§ 233 and 234 (California "Kin Care laws"); (2) violations of California

15  Business & Professions Code § 17200, *et seq*. (unfair competition law or UCL); and (3) Declaratory

16  Relief pursuant to California Code of Civil Procedure § 1060.  Compl. ¶¶ 41–73.

17          3.      Plaintiffs ask for "damages, monetary relief, wages, premiums, reimbursements, and

18  other sums due to Plaintiffs and the Class by virtue of their claims."  *Id*. at Prayer, I; *see also id.* ¶

19  5.  Plaintiffs also seek to recover "restitution for unfairly and unlawfully designating sick leave."

20  *Id.* at Prayer, H.  In addition to monetary relief, Plaintiffs seek substantial injunctive relief,

21  including an order requiring "an accounting of all paid sick leave designations, of all attendance

22  policy point designations, and of all resultant amounts unlawfully retained by Defendant;" and

23  orders requiring United to change the way it applies its sick leave and attendance policies.  Prayer,

24  E–G; *see also id.* ¶ 5.  Finally, Plaintiffs seek to recover attorneys' fees.  *Id.* ¶ 63; Prayer, J.

25          4.      Plaintiffs personally served United with the Complaint on November 10, 2021.

26          5.      United's removal of this Action is timely because United is removing it within 30

27  days of service of the Complaint.  *See* 28 U.S.C. § 1446(b); Cal. Civ. Proc. Code  § 415.10.

28          6.      In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders

**DEFENDANT UNITED'S NOTICE OF REMOVAL**

CASE NO. 3:21-CV-09561

1    served upon United are attached as <u>Exhibit A</u>.

2           7.     Pursuant to 28 U.S.C. § 1446(d), United will promptly give written notice of

3    removal of the Action to Plaintiffs and file a copy of this Notice of Removal with the Clerk of the

4    Superior Court of the State of California, County of San Mateo.

5    **Intradistrict Assignment**

6           8.     Plaintiffs filed this Action in the Superior Court of California, County of San Mateo;

7    it may therefore be removed to the San Francisco or Oakland Division of the Northern District of

8    California.  28 U.S.C. § 1441(a); L.R. 3-2(d).

9    **II.      GROUNDS FOR REMOVAL**

10          9.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331,

11   1332(d), and 29 U.S.C. § 1132, and this matter may also be removed by United pursuant to 28

12   U.S.C. § 1441(b).

13   **Federal Question Jurisdiction Through Complete Pre-emption**

14         10.    This Action invokes the Court's original jurisdiction under 28 U.S.C. § 1331, and

15   can be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441, because this case

16   presents a federal question arising under the Employee Retirement Income Security Act of 1974

17   ("ERISA").  *See* 29 U.S.C. § 1001 *et. seq.*  Although Plaintiffs do not refer to ERISA in their

18   Complaint, their claims for sick-leave benefits arise out of—and are inextricably intertwined

19   with—United's ERISA-regulated Sick Leave Plan.  So, under the well-settled doctrine of

20   "complete pre-emption," these claims are deemed as arising under ERISA itself.  Accordingly, this

21   Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331.

22         11.    Although federal question jurisdiction is ordinarily determined by looking to "the

23   face of [a] plaintiff's properly pleaded complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

24   (1987), some federal statutes call for a court to look beyond the face of the complaint because they

25   "completely pre-empt" or "wholly displace[]" state-law causes of action, *Beneficial Nat. Bank v.*

26   *Anderson*, 539 U.S. 1, 8 (2003).  "When the federal statute completely pre-empts the state-law

27   cause of action, a claim which comes within the scope of that cause of action, even if pleaded in

28   terms of state law, is in reality based on federal law."  *Id.*  ERISA is one of these statutes; it can

3

1    "convert[] state causes of action into federal ones" for removal purposes. *Aetna Health Inc. v.*

2    *Davila*, 542 U.S. 200, 209 (2004).

3         12.    ERISA is designed to provide a uniform regulatory regime over employee benefit

4    plans throughout the United States. *Aetna Health Inc.*, 542 U.S. at 208; *see also* 29 U.S.C.

5    § 1001(b).   To this end, ERISA includes expansive preemption provisions, which ensure that

6    employee benefit plan regulation would be "exclusively a federal concern." *Aetna Health Inc.*, 542

7    U.S. at 208 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

8         13.    For a state law claim to be completely pre-empted by ERISA, it must fall within the

9    scope of the civil enforcement provisions of ERISA § 502(a), which is codified as 29 U.S.C.

10   § 1132(a). *See id.* at 209–10; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 67 (1987) (holding

11   that "suit by a beneficiary to recover benefits from a covered plan ... falls directly under

12   § 502(a)(1)(B) of ERISA" and, therefore, was "necessarily federal in character" and subject to

13   removal to federal court).   Specifically, a state-law claim is completely pre-empted when (1) "an

14   individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B),"

15   and (2) "there is no other independent legal duty that is implicated by a defendant's actions."

16   *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011) (internal

17   quotation marks and citations omitted).   Here, Plaintiffs' Kin Care claim satisfies both conditions.

18              Plaintiffs Can Bring Their Benefit Claim Only Under ERISA § 502(a)

19        14.    To the extent that Plaintiffs can bring any sick-leave benefits claim against United,

20   that claim must be brought pursuant to ERISA § 502(a), which permits a "participant" or

21   "beneficiary" of an ERISA-regulated plan to "recover benefits due to him under the terms of his

22   plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under

23   the terms of the plan." 29 U.S.C. § 1132(a)(1).   At the heart of the Complaint is the claim that

24   Plaintiffs' employer denied them sick-leave benefits to which they believe they are entitled.   And

25   since those benefits are governed by an ERISA-regulated plan, Plaintiffs are actually seeking

26   remedies they can only seek under ERISA § 502(a).

27        15.    To begin with, United's Sick Leave Plan is a benefit plan established pursuant to

28   and regulated by ERISA. *See* 29 U.S.C. § 1001 *et. seq.*  ERISA covers (1) a "plan, fund or program"

1   (2) established or maintained (3) by an employer, (4) "for the purpose of providing for its

2   participants or their beneficiaries … benefits in the event of sickness." 29 U.S.C. § 1002(1). By

3   its plain terms, United's Sick Leave Plan, which calls itself a "welfare plan" within the meaning of

4   ERISA (attached as Exhibit B), satisfies each of these requirements by establishing a trust funded

5   by United, to benefit the company's employees. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th

6   Cir. 1998), *superseded by statute on other grounds*, 28 U.S.C. § 1453(b) ("Because the plan

7   covering [the plaintiff] was sponsored and paid for by [the plaintiff's] employer, and covered all of

8   the [employer's] full-time employees, it was an employee benefits plan under ERISA."); *Sarraf v.*

9   *Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996) (noting that plan documents "characterized

10  the … plan as an ERISA plan," which evidenced employer's intent to create an ERISA plan).

11  Moreover, United contributes actuarially determined funds every month to a Sick Leave Trust,

12  following a written formula to provide the Trust with twice the amount of money likely needed to

13  cover employees' sick leave benefits for any given month. *See* Exhibit C, App. A. The Trustee is

14  empowered to "initiat[e] legal proceedings to enforce [United's] obligations to the Trust." *Id.* at

15  Art. III-4(b). Any funds contributed to the Trust become Trust assets and do not belong to United

16  for income tax purposes or any other purpose. *Id.* at Art. III-5(a). As a result, no assets of the Trust

17  are subject to the claims of United's creditors, and the assets cannot revert to United unless the

18  funds were contributed because of a mistake of fact or unless ERISA permits reversion.[1] Plaintiffs

19  do not allege otherwise.

20      16.     With this background in mind, the true nature of the Complaint comes into focus.

21  Although Plaintiffs expressly mention only state law, they recognize that their claims "arise[] out

22  of Defendant United's sick leave and attendance polices." Compl. ¶ 3; *id.* ¶ 1. Analyzing these

23

24          [1] United's Sick Leave Plan and the company's Sick Leave Trust documents are attached to
    this Notice of Removal to assist this Court in deciding whether it has subject matter jurisdiction.
25  *See, e.g.*, *Parrino*, 146 F.3d at 703. These documents are also "incorporated by reference into [the]
    complaint" both because Plaintiffs "refer[] extensively to the document[s]" and because "the
26  document[s] form[] the basis" of Plaintiffs' claims. *United States v. Ritchie*, 342 F.3d 903, 908
    (9th Cir. 2003); *see also, e.g.*, *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665
27  n.1 (9th Cir. 2009) (considering insurance policies incorporated by reference). Indeed, the claims
    here "arise[] out of Defendant United's sick leave and attendance polices," which Plaintiffs
28  reference throughout their complaint. Compl. ¶ 3; *see also id.* ¶¶ 1, 5, 18, 22, 23.

**DEFENDANT UNITED'S NOTICE OF REMOVAL**

CASE NO. 3:21-CV-09561

claims will require the Court to interpret United's ERISA-regulated Sick Leave Plan, determine whether to grant restitution and damages under the Plan, and decide whether to declare the Plan invalid and enjoin United from administering the Plan according to its terms. *See* Compl. ¶¶ 4–5. Such determinations must be made, if at all, pursuant to ERISA. *See, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987) ("Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits."); *Fossen*, 660 F.3d at 1107.

17.     Importantly, the Kin Care laws themselves expressly state that they do not apply where, as here, sick-leave benefits are "provided under an employee welfare benefit plan subject to [ERISA]." Cal. Lab. Code § 233(b)(3)(B). Instead, Plaintiffs can bring claims only under the terms of United's Sick Leave Plan, according to the procedures referenced there, and in pursuit of remedies provided under ERISA.

### Plaintiffs' Kin Care Claim Depends on the Sick Leave Plan

18.     Plaintiffs' claim for benefits under the Kin Care laws depends entirely on United's duty under the Sick Leave Plan. The Kin Care laws permit employees to use half of their entitlement to sick leave under their employers' sick leave programs to care for family members— but this allowance applies only if and when an "employer provides sick leave for employees." Cal. Lab. Code § 233(a). So, without United's Sick Leave Plan, the Kin Care laws would never have been triggered. Since United's sick leave is housed in its ERISA-regulated Plan, any purported duty that United owes here necessarily depends on that Plan's terms and administration, as well as ERISA's rules and remedies. In fact, to calculate the sick-leave that is allegedly due under the Kin Care laws would require the Court to interpret United's Plan to determine how many sick days it provides and the extent to which it permits leave to be designated for family care. In short, "interpretation of the terms of [United's] benefit plans forms an essential part of [Plaintiffs'] claim," and liability would exist here, if at all, "only because of [United's] administration of [its] ERISA-regulated benefit plan[]." *Aetna Health*, 542 U.S. at 213.

19.     Accordingly, Plaintiffs' Kin Care claim falls within the scope of ERISA § 502(a), meaning the claim is completely pre-empted and removable as a federal question. *Id.* at 214.

**DEFENDANT UNITED'S NOTICE OF REMOVAL**

**CASE NO. 3:21-CV-09561**

**Class Action Fairness Act (CAFA) Jurisdiction**

20.     This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1332(d) (as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA")). Federal courts have original diversity jurisdiction over a class action whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and (3) "the number of members of all proposed plaintiff classes in the aggregate is" 100 or more.  28 U.S.C. § 1332(d)(2), (d)(5)(B).  As a threshold matter, this is a putative class action.  Compl., *e.g.*, ¶¶ 1, 35–40.  As set forth below, all additional requirements to establish jurisdiction pursuant to CAFA are satisfied in this case.

Number of Proposed Class Members

21.     The number of putative class members in the aggregate exceeds 100.  28 U.S.C. § 1332(d)(5)(B).  Plaintiffs allege that the putative Class includes approximately 3,000 individuals currently or formerly employed by United in California as Technicians since November 5, 2017, which Plaintiffs allege is the start of the putative class period.  Compl. ¶ 36.  The 100 class member requirement is therefore met.

Minimal Diversity Exists Between Plaintiffs and United

22.     Minimal diversity of citizenship exists here.  *See* 28 U.S.C. § 1332(d)(2).  Plaintiffs plead in their Complaint that they are employed by United in California and are California citizens who reside within the state.  Compl. ¶¶ 10, 11.  Plaintiffs are deemed a "citizen" of California, the state where they are domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Moreover, the alleged putative class consists of persons who are or were employed in California.  Compl. ¶ 36.

23.     A corporation is "deemed to be a citizen of any State [] by which it has been incorporated and of the State [] where it has its principal place of business." 28 U.S.C. §1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).  United is incorporated in Delaware and has its

///

///

**DEFENDANT UNITED'S NOTICE OF REMOVAL**

**CASE NO. 3:21-CV-09561**

1   principal place of business in Chicago, Illinois.[2]

2      24.     For minimal diversity to exist, one Plaintiff must be diverse from one defendant.  28

3   U.S.C. § 1332(d)(2)(A).   Here, Plaintiffs (in addition to many of the individuals they seek to

4   represent) are diverse from United.  The minimal diversity requirement is therefore satisfied.

5                       The Amount in Controversy Exceeds $5,000,000

6      25.     Though United concedes neither liability on Plaintiffs' claims nor the propriety or

7   breadth of the class Plaintiffs allege or the employees they seek to represent, the Complaint, which

8   alleges that United's sick leave policies violate California's Kin Care laws and demands that United

9   change those policies, places in controversy more than $5,000,000.  28 U.S.C. § 1332(d).

10      26.     Plaintiffs seek to represent all Technicians employed by United in California who

11   were subject to United's sick leave and attendance policies within four years preceding the filing

12   of the Complaint to the time of final judgment.  Compl. ¶ 1.  Based on these allegations, Plaintiffs

13   place over $5,000,000 in controversy even with conservative assumptions.[3]

14      27.     *Statutory Damages for Violations of Section 233.*  Plaintiffs, for themselves and the

15   class, seek monetary damages for the alleged violations of the Kin Care laws.  Compl. ¶ 5; *id.* at

16   Prayer, I.  California's Kin Care laws, if applicable to Plaintiffs and the class, permit an employee

17   to use half of his or her annually accrued sick leave days to care for defined family members.  Cal.

18   Lab. Code § 233.   Employees may recover "one day's pay" for "violations" of the Kin Care laws.

19   *Id.*, subd. (d).  Plaintiffs allege that United improperly designates *all* instances of sick leave taken

20   as having been used for kin care purposes, until the kin care allotment is exhausted, therefore

21   depriving Plaintiffs and the putative class of the ability to use half of their annual sick leave to care

22

---

23      [2] Plaintiffs have also named Does 1-10 as defendants in this case, but the mere presence of
fictitious defendants does not defeat diversity.   28 U.S.C. § 1441(b)(1) ("[T]he citizenship of
24   defendants sued under fictitious names shall be disregarded."); *see also Newcombe v. Adolf Coors
Co.*, 157 F.3d 686, 690 (9th Cir. 1998).

25      [3] In alleging the amount in controversy for purposes of removal, United does not concede
or acknowledge in any way that the allegations in Plaintiffs' Complaint are accurate or that either
26   Plaintiff or any proposed class member is entitled to any amount under any claim or cause of action.
Nor does United concede or acknowledge that any class or subclass may be certified, or that the
27   Action may proceed on a representative basis, whether as alleged or otherwise, or that any or all of
its current or former employees are entitled to any recovery in this case, or are appropriately
28   included in the putative class.

1    for family members. Compl. ¶¶ 3, 5, 26–34. Plaintiffs allege that all putative class members accrue

2    96 hours of sick leave annually.  Compl. ¶ 18.  Thus, assuming that employees are entitled to one

3    day's pay for each occurrence of a violation of the Kin Care laws, and conservatively assuming that

4    Plaintiffs and the putative class were denied kin care leave on two occurrences per year, there is

5    $7,680,000 in controversy ($40/hour x 16 hours/year x 4 years x 3,000 class members =

6    $7,680,000) in statutory damages.  Notably, this calculation of the amount in controversy is

7    conservative for numerous reasons, such as its exclusion of other expenses that putative class

8    members may have incurred to care for sick family members in the absence of available leave

9    pursuant to the Kin Care laws, such as out-of-pocket expenses for outside caregivers or lost wages

10   incurred by another family to care for the sick family member.

11        28.    *Damages for Violations of Section 234.*  Plaintiffs also claim that United improperly

12   "auto-designates" all instances of sick leave as kin care and then assigns "occurrences" or "points"

13   to putative class members for use of sick leave, which they allege violates California Labor Code

14   section 234 ("An employer absence control policy that counts sick leave taken pursuant to Section

15   233 as an absence that may lead to or result in discipline, discharge, demotion, or suspension is a

16   per se violation of Section 233.").  Compl. ¶ 43–48.  The remedy for a violation of Section 234 is

17   either actual damages or one day's pay.  Cal. Labor Code § 234 (referring to damages available

18   under Section 233, which include "reinstatement and actual damages or one day's pay, whichever

19   is greater").  Setting aside the costs of reinstatement for putative class members who may have been

20   terminated as a result of the accumulation of violations of the attendance policy, and ignoring any

21   determination of the "actual damages" associated with the assignment of attendance "points" for

22   sick leave usage, this claim still puts in controversy at least **$4,225,280**.  Although data was not

23   able to be collected from all locations, this figure is based on the data that was able to be collected

24   regarding points assigned to putative class members related to sick leave use during the putative

25   class period, multiplied by the average daily rate of putative class members (13,204 x $40/hour x 8

26   hours/day).

27        29.    *Injunctive Relief.*  Plaintiffs also seek injunctive relief.  Where, as here, the plaintiffs

28   seek injunctive relief, "the amount in controversy . . . may include 'the cost of complying with an

DEFENDANT UNITED'S NOTICE OF REMOVAL

CASE NO. 3:21-CV-09561

1   injunction . . . .'" *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (*quoting*

2   *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016)).  "Under the

3   'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to

4   either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (S.D.),*

5   *N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). "In other words, where the value of plaintiff's potential

6   recovery ... is below the jurisdictional amount, but the potential cost to the defendant of complying

7   with the injunction exceeds that amount, it is the latter that represents the amount in controversy

8   for jurisdictional purposes." *Id.*  In short, "[i]t is proper under CAFA to consider the defendant's

9   cost of compliance with an injunction just as it is proper to consider the plaintiff's benefit from the

10  injunction." *Lokey v. CVS Pharmacy, Inc.*, No. 20-CV-04782-LB, 2020 WL 5569705, at *5 (N.D.

11  Cal. Sept. 17, 2020).  Plaintiffs' request for injunctive relief takes two primary forms.

12        a.  First, Plaintiffs request this Court "[o]rder an accounting of all paid sick leave

13            designations, of all attendance policy point designations, and of all resultant

14            amounts unlawfully retained by Defendant."  Compl. at Prayer, G.  In essence,

15            Plaintiffs ask for a Court order that would require United to investigate each and

16            every instance of sick leave taken by putative class members in the last four years

17            to determine whether the leave was taken for reasons covered by the Kin Care laws,

18            and, if so, whether the putative class member would have elected to designate that

19            instance of sick leave as Kin Care, given the choice, and to calculate what, if

20            anything, may be owed to the class member based on the results of the investigation.

21            Completing this Herculean task would require an individualized and personal

22            inquiry, as there is no other way to know how an individual would have

23            characterized a particular instance of sick leave.  During the class period,

24            Technicians employed by United in California have recorded more than 170,000

25            sick events.  United estimates it would take, conservatively, at least 20 minutes per

26            recorded sick leave event to conduct this inquiry.  This calculation includes not only

27            time for interviewing the employee to evaluate the sick leave use, but also finding

28            and isolating all potentially relevant sick leave events, which are stored across

10

**DEFENDANT UNITED'S NOTICE OF REMOVAL**

CASE NO. 3:21-CV-09561

numerous platforms.  Assuming United could hire consultants at a rate of $20/hour to complete this inquiry, United would have to pay **$1,122,000** to conduct an accounting, if ordered by the Court ($20/hour x .33 x 170,000 sick events).  United also estimates that it would have to hire an experienced consultant to develop and manage the process, which would cost at least an additional **$60,000**.  This calculation is conservative not only in the metrics it assumes, but also because it excludes entirely the costs and burden to current United employees to manage the process and take necessary steps based on the results of the investigation.

      b.   Second, Plaintiffs seek an order requiring United to refrain from applying its paid sick leave practices and attendance policies in a manner that Plaintiffs allege violate the Kin Care laws.  Compl. at Prayer, E–F.  Stated another way, Plaintiffs demand that United change its policies and practices regarding sick leave and attendance to permit employees to use sick leave to care for family members not currently covered by United's Sick Leave Plan, and to refrain from auto-designating all sick leave as kin care leave.  To change its policies in the manner Plaintiffs demand, United estimates that it would incur **$500,000** in hard costs (*e.g.*, costs to pay the ERISA consultant to change the Plan and the costs of changing IT systems to implement those changes).  This calculation is conservative in that it excludes the internal costs incurred by United employees to develop and implement changes to these policies.

30.    Plaintiffs also request attorneys' fees and costs.  Compl. ¶ 63; *id*. at Prayer, J. Where, as here, Plaintiffs are entitled to recover future attorneys' fees if this action succeeds, "there is no question that future [attorneys' fees incurred after removal] are 'at stake' in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (internal citations omitted); Cal. Lab. Code § 233(e) (providing for recovery of attorneys' fees). Using "25% as a benchmark" for attorney's fees would add **$3,396,820** to the amount in controversy.  *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *Anderson v. Starbucks Corp.*, No. 3:20-CV-01178-JD, 2020 WL 7779015, at *2 (N.D. Cal. Dec.

11

31, 2020).

31.    Accordingly, the amount in controversy exceeds $5,000,000, as set forth in the chart below[4]:

| Item | Amount in Controversy |
| --- | --- |
| Statutory Damages | $7,680,000 |
| One day's wages per "Occurrence" / "point" | $4,225,280 |
| Value of Injunctive Relief | $1,682,000 |
| Attorneys' Fees (.25 x damages) | $3,396,820 |
| **TOTAL** | **$16,984,100** |

### III.    CONCLUSION

WHEREFORE, the above-titled Action is hereby removed to this Court from the Superior Court of the State of California, County of San Mateo.

Dated: December 10, 2021                         Jones Day


By: *s/ Koree B. Wooley*
        Koree B. Wooley

Attorneys for Defendant
UNITED AIRLINES, INC.

---

[4] If challenged, United reserves the right to offer evidence or information to establish the amount in controversy on all claims alleged in the Complaint.  For example, United reserves the right to show that the number of putative class members is greater than alleged in the Complaint, that the average hourly rate of putative class members is higher than $40/hour, that the value of reinstatement or actual damages on the claim under Section 233 is greater than one day's pay, and that the costs of complying with the requested injunctive relief is greater than set forth in these papers.  United reserves the right to prove these allegations by, for example, offering additional evidence related to the costs of compliance with an injunction, which United has excluded to simplify the calculations set forth in these papers.

12