1

2

3                          UNITED STATES DISTRICT COURT

4                          NORTHERN DISTRICT OF CALIFORNIA

5

6    JOHN R. SCHOLZ, III, ET AL.,                    Case No. 4:21-cv-09561-YGR

7                          Plaintiffs,               ORDER GRANTING MOTION TO REMAND

8           v.                                       Dkt. No. 23

9    UNITED AIRLINES, INC., ET AL.
                           Defendants.
10

11          Plaintiffs John R. Scholz, III, and Kevin E. Bybee, individually and on behalf of other

12   similarly situated technicians, filed this action against defendants United Airlines, Inc. ("United")

13   and Does 1 through 10, inclusive.  Plaintiffs assert three causes of actions, namely violations of

14   the California Labor Code and California Business & Professions Code, as well as a claim for

15   declaratory relief related to the alleged statutory violations.

16          Now before the Court is plaintiffs' motion to remand for lack of subject matter jurisdiction

17   on the following bases: (1) that United has not made the requisite showing that the Employee

18   Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. §§ 1001, *et seq*., preempts

19   plaintiffs' state law claims; and (2) that United has not demonstrated that the amount in

20   controversy exceeds $5,000,000 under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §

21   1332(d).  Plaintiffs also invoke several abstention doctrines.  Having carefully considered the

22   papers and exhibits submitted in connection with the motion, the pleadings in this action, and upon

23   further consideration after oral argument which occurred on February 15, 2022, the Court ORDERS

24   that the motion to remand is GRANTED for the reasons explained more fully below.

25   I.     BACKGROUND

26          On November 5, 2021, plaintiffs filed their class action lawsuit in the Superior Court of the

27   State of California, County of San Mateo.  (Complaint ["Comp."], Dkt. No. 1-1.)  Plaintiffs are

28   California citizens and employed as technicians by United.  The lawsuit "arises out of Defendant

United States District Court
Northern District of California

United's sick leave and attendance policies." (*Id*. ¶ 3.)  Plaintiffs allege that United violates California's Kin Care laws, which amongst other things, allows an employee to use up to half of their sick leave to care for certain qualifying family members and elect which sick leave to designate for kin care purposes.  Cal. Lab. Code §§ 233-234.[1]  As alleged, "[t]echnicians accrue 8-hours of paid sick leave for each month the employee is in a paid status or 96-hours annually, and can accumulate sick leave in a 'sick bank' up to a maximum of 1,600 hours." (Comp. ¶ 18.)  "United's sick leave policy auto-designates *every* use of sick leave as kin care sick leave, even when it is not kin care sick leave, until kin care sick leave is exhausted." (*Id*. ¶ 3.)  The complaint also alleges that United disciplines plaintiffs' and similarly situated employees for using sick leave.  (*Id*. ¶¶ 4, 28, 33.)

Plaintiffs' class "includes approximately 3,000 individuals employed by or formerly employed by Defendant United in California . . . as Technicians at any time since November 5, 2017 ('Class Period')." (*Id*. ¶ 36.)  The complaint seeks "a declaration Defendant United's sick leave and attendance policies are unlawful under California law; an injunction prohibiting use of, and enforcement of, the unlawful sick leave and attendance policy, restitution, accountings; damages; and available penalties pursuant to California law." (*Id*. ¶ 5.)

After being served with the class action complaint, United timely filed a notice of removal in this Court on December 10, 2021, asserting federal jurisdiction pursuant to ERISA and CAFA. (Dkt. No. 1.)  Six days later, United also filed a motion to dismiss that plaintiffs did not oppose. (Dkt. No. 13, 21.)[2]  However, plaintiffs filed a motion to remand the case on the grounds that

---

[1]  Section 233 provides in pertinent part that: "[a]ny employer who provides sick leave for employees shall permit an employee to use in any calendar year the employee's accrued and available sick leave entitlement, in an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement, for the reasons specified in subdivision (a) of Section 246.5.  The designation of sick leave taken for these reasons shall be made at the sole discretion of the employee."  Cal. Lab. Code § 233(a).  Section 234 provides that: "[a]n employer absence control policy that counts sick leave taken pursuant to Section 233 as an absence that may lead to or result in discipline, discharge, demotion, or suspension is a per se violation of Section 233.  An employee working under this policy is entitled to appropriate legal and equitable relief pursuant to Section 233."  Cal. Lab. Code § 234.

[2]  Plaintiffs did not file an opposition in order to avoid waiving jurisdiction.  The waiver argument is misplaced.  "Courts generally have not found waiver where a plaintiff undertakes minimal or expected case-management obligations once a case is removed."  *SWC Inc. v. Elite*

United States District Court
Northern District of California

1   United is permanently enjoined from asserting that its sick leave plan is exempt from the Kin Care

2   laws, that the sick leave plan is not an ERISA-regulated plan, and that CAFA's amount in

3   controversy requirement is not met.  (Dkt. No. 23.)

4       Background information concerning the permanent injunction is informative.  In 2007,

5   United was sued by pilots (not technicians) and their Union in state court, claiming that United's

6   sick leave plan then in effect violated California's Kin Care laws.  At the time, United did not

7   permit "pilot employees to use accrued sick leave to attend to an illness of a child, parent, spouse,

8   or domestic partner."  *Airline Pilots Assn. Internant v. United Airlines, Inc*., 223 Cal. App. 4th

9   706, 710 (2014) ("*APAI*").  Before the state court, United argued that ERISA preempted the

10  plaintiffs' state law claims because the old plan was an ERISA-regulated welfare plan.  The

11  superior court disagreed and held that the old plan was funded through a non-ERISA "payroll

12  practice" on the basis that the sick leave benefits were paid as normal compensation from United's

13  general assets as opposed to through a bona fide separate trust.  United was permanently enjoyed

14  from denying paid sick leave care for families with respect to United's "pilot employees who are

15  [union] members."  (Dkt. No. 24-3 ¶ 4.)  Furthermore, "[n]othing in the injunction bars [United]

16  from reforming the United Airlines, Inc. Sick Leave Trust as a Voluntary Employee Beneficiary

17  Association or other non-grantor trust or precludes [United] based on such reformation from re-

18  raising the issue of whether the Sick Leave Trust is a 'bona fide separate trust.'"  (*Id*. ¶ 6.)  The

19  California Court of Appeal affirmed.  *APAI*, 223 Cal. App. 4th at 710, 719, 723-26.[3]

20      This lawsuit follows from modifications to the United Airlines Employee Sick Leave Plan

21  ("Sick Leave Plan") effective February 1, 2016.  (Declaration of Lincoln Lounsbury ["Lonsbury

22

23  _____

24  *Promo Inc*., 234 F. Supp. 3d 1018, 1023 (N.D. Cal. 2017) (collecting cases).  Plaintiffs could have
    sought to stay filing of an opposition pending their motion to remand.

25      [3] Plaintiffs request that the Court take judicial notice of the prior decisions as well as
26  documents filed in the state court proceedings.  (Dkt. No. 24.)  United does not oppose the request.
    Courts regularly take judicial notice of the "undisputed matters of public record, including
    documents on file in federal or state courts."  *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th
27  Cir. 2012); *see also United States ex rel. Robinson Rancheria Citizens
    Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings
28  in other courts, both within and without the federal judicial system, if those proceedings have a
    direct relation to matters at issue.'" (citation omitted)).  The Court does so here.

Dec."], Dkt. No. 30-1, ¶ 2 and Ex. A.)  Like the prior policy, United does not provide sick leave for an absence due to family illness.  (Lonsbury Dec., Ex. A, art. 4.4(b).)  United's pilots and the pilots' union are not parties to this case.

## II.     LEGAL STANDARD

A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case.  28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.").  The federal court must remand the action to state court if subject matter jurisdiction is lacking.  28 U.S.C. § 1447(c).

The removing party "has the burden to prove, by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010).  The plaintiffs are the masters of their complaint and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392.  Only state-court actions that could have been filed in federal court in the first instance may be removed. *Id*.  Thus, there generally exists a "strong presumption against removal jurisdiction" when evaluating a motion to remand. *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992).

Pursuant to CAFA, this Court has original jurisdiction over class actions in which there are at least 100 class members, at least one of which is diverse in citizenship from any defendant, and for which the aggregate amount in controversy exceeds the sum of $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d); *Ibarra v. Manheim Invs., Inc*., 775 F. 3d 1193, 1196-97 (9th Cir. 2015).  However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  Under CAFA, the removing party bears the burden of establishing federal jurisdiction. *Ibarra*, 775 F.3d at 1197.  The removing party must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, *Dart*, 574 U.S. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)), that the number of class members exceeds 100, and that minimal diversity exists between the parties. *See Abrego v. Dow Chem. Co*., 443 F.3d 676, 685 (9th Cir. 2006).

When a party moves to remand, they present either a "facial" attack or a "factual" attack on the removing party's showing of the jurisdictional elements.  A facial attack does not present any new evidence, but instead argues that the allegations offered "are insufficient on their face to invoke federal jurisdiction." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (cleaned up and citation omitted)).  By contrast, a "factual" attack "contests the truth of the [] factual allegations, usually by introducing evidence outside the pleadings." *Salter*, 974 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121 (citation omitted)).  When a removing party is presented with a facial attack, the Court applies a lower evidentiary standard; in those cases, a removal "need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." *See Salter*, 974 F.3d at 964 (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)) (cleaned up).  When the attack is factual, courts apply a higher evidentiary standard.  The removing party "must support [the] jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context." *Salter*, 974 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121 (citations omitted)).

## III.   DISCUSSION

### A.   WHETHER COMPLETE PREEMPTION SUPPORTS FEDERAL QUESTION JURISDICTION

United first removed on the basis of complete preemption under ERISA.  Importantly, the law distinguishes between complete and conflict preemption under ERISA.  This is a critical distinction in evaluating a motion to remand.  There is no dispute that complete preemption under the civil enforcement provisions of ERISA Section 502(a) may support removal. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209-10 (2004).  However, conflict preemption under ERISA Section 514(a), which displaces state laws that "relate to" ERISA-regulated employee benefit plans, does not confer federal jurisdiction and is therefore not a basis for removal. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).

As recognized by the Ninth Circuit the complete preemption analysis, "under § 502(a) is 'really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad

5

as to entirely replace any state-law claim.'" *Marin Gen. Hosp.*, 581 F.3d at 945 (citation omitted). In order to determine whether an asserted state-law cause of action comes within the scope of ERISA's complete preemption provision to support removal, *Davila* devised a two-prong test. *Id.* at 946. A state-law cause of action is completely preempted if: (1) "an individual at some point in time, could have brought [the] claim" under ERISA section 502(a); and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* (quoting *Davila*, 542 at 210). "The two-prong test of *Davila* is in the conjunctive. A state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied." *Id.* at 947. The parties do not dispute this framework.

### 1. Application Of The *Davila* Test

Having set forth the relevant framework for ERISA preemption, the Court now applies the *Davila* test to the facts of this case in order to determine whether the defendant has met its burden of establishing federal jurisdiction.

### a. Could Plaintiffs Have Brought Their Claims Under ERISA's Remedial Scheme

To find complete preemption, the Court must determine that the plaintiffs, "at some point in time," could have brought their claims under ERISA § 502(a). *Davila*, 542 U.S. at 210. Under ERISA § 502(a)(1)(B), a civil action may be brought by an ERISA plan participant or beneficiary seeking to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This essentially breaks down to four elements: "(1) there is a relevant ERISA plan; (2) Plaintiff has standing to sue under that plan; (3) the Defendant is an ERISA entity; and (4) the complaint seeks compensatory relief akin to that available under § 502(a)." *McGill v. Pac. Bell Tel. Co.*, 139 F. Supp. 3d 1109, 1117 (C.D. Cal. 2015) (citation omitted). Plaintiffs contend that their claim is premised on the designation of benefits as opposed to a denial of benefits, and that the sick leave plan is an exempt payroll practice that is not regulated by ERISA.

ERISA regulates "employee welfare benefit plan[s]," and "welfare plan[s]" which are defined to mean "any plan, fund, or program which was heretofore or is hereafter established or

6

maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . ." 29 U.S.C. § 1002(1).  Thus, from the plain text of the statute, an ERISA "welfare plan" is "(1) a plan, fund or program, (2) established or maintained by an employer through the purchase of insurance or otherwise, (3) for the purpose of providing medical, surgical, or hospital care or benefits (4) to its participants or their beneficiaries." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 907 (9th Cir. 2001).

Here, the Sick Leave Plan is characterized as a "'welfare plan' within the meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974[.]" (Dkt. No. 30-1, art. 1.1.)  There is no dispute that United is an employer.  The Sick Leave Plan is also "designed to provide funded sick leave benefits to the employees . . . in the event of an employee's sickness." (*Id.*)  The characterization of the plan as an ERISA plan further demonstrates an intent to create an ERISA-regulated plan.  *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996) (plan description evinced intent to create an ERISA plan).[4]  Thus, the Sick Leave Plan clearly fits the statutory definition of an "welfare plan," 29 U.S.C. § 1002(1), and plaintiffs do not seriously dispute these statutory requirements.[5]

However, the plan's satisfaction of the statutory definition does not end the analysis.  A

_____

[4]  Plaintiffs have also submitted evidence acknowledging their own participation in the plan.  (*See* Dkt. No. 23-12 ("Since I am a plan participant in the United Airlines sick leave plan, [p]lease allow this email to serve as my written request for information regarding this plan, as is my right under ERISA.")).

[5]  Plaintiffs criticize United for seeking to rely on the *Dillingham* factors to support the existence of a plan.  *See, e.g.*, *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (holding that a plan exists, whether "pursuant to a writing or not," where "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits").  United did not invoke Dillingham and plaintiffs' argument in reply is misplaced.  The Ninth Circuit has clarified that the *Dillingham* factors do not apply where there is a written instrument.  *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 724 (9th Cir. 2021); *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 652 (9th Cir. 2008) ("All of the cases applying the [*Dillingham*] criteria address the question whether an informal, or de facto, ERISA plan has been established, and all involve some type of unwritten or informal promise made by an employer to its employees.").  United is relying on the import of the statute and a written plan.

United States District Court
Northern District of California

regulation of the Secretary of Labor excludes certain "payroll practices" from the application of ERISA. *See* 29 C.F.R. § 2510.3-1(b)(2); *Bassiri v. Xerox Corp.*, 463 F.3d 927, 929 (9th Cir. 2006); *Alaska Airlines, Inc. v. Or. Bureau of Labor*, 122 F.3d 812, 812 (9th Cir. 1997). More specifically, the "payroll practices" exemption provides that an "employee welfare benefit plan" or "welfare plan" for purposes of ERISA shall not include "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons[.]" 29 C.F.R. § 2510.3-1(b)(2). Thus, the payroll practices exemption would apply here if (1) the payment of sick leave benefits under plan qualifies as "normal compensation" and (2) plan benefits are paid from United's general assets.

The analysis from both parties is cursory on whether the plan is an exempt payroll practice. Neither party offered clarity at the hearing, however, United admitted that it bears the burden on removal to demonstrate that its plan is not exempt. Context is relevant here for why United has failed to satisfy its burden. The California Court of Appeal previously held that United's plan was an exempt payroll practice. *APAI*, 223 Cal. App. 4th 706 (2014). The California Court of Appeal held that United's contributions to the trust were not "actuarially determined and did not otherwise bear a relationship to the Plan's accruing liability." *Id.* at 720. The Court of Appeal also held that the plan was not a bona fide separate trust because the trust's assets were "available to United's creditors," which exposed the employees' sick leave benefits to risk. *Id.* at 725.

Before this Court, United broadly contends in opposition that it reformulated its plan to correct each purported flaw identified by the prior proceedings. With respect to the amount of contributions, United contends that it makes monthly contributions, "based on written, actuarial calculations to provide the Trust with twice the amount of money likely needed to cover employees' sick leave benefits for any given month." (Dkt. No. 30 at 4.) The Ninth Circuit has instructed that "we must focus on the *actual methods of payment*" in assessing whether a plan is an exempted payroll practice. *Alaska Airlines, Inc.*, 122 F.3d at 814 (emphasis supplied). United's conclusory assertion that the plan satisfies the exemption, without more, does not carry its burden as presented. While United submits its current plan, and while its current plan may very well not

be exempt from ERISA as applied to the new payment method, it is not the Court's burden to make legal or factual arguments on United's behalf. *Geographic Expeditions, Inc.*, 599 F.3d at 1106-07 (providing that the removing party has the burden to establish federal jurisdiction); *Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." (citation omitted)). The record before the Court from United is objectively thin and does not provide a sufficient factual or legal foundation for the Court to find as a matter of law that United's plan is a non-exempt ERISA-regulated plan.[6] This issue frames the *Davila* analysis.

Therefore, United has not demonstrated that plaintiffs' claims warrant complete preemption. Absent complete preemption, the complaint does not arise under federal law.

**B. WHETHER CAFA'S JURISDICTIONAL REQUIREMENTS ARE SATISFIED**

With respect to jurisdiction under CAFA, the sole issue in dispute is whether CAFA's five million dollar amount in controversy requirement has been met.[7] The amount in controversy is "determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint . . . ." *Fritsch v. Swift Transp. Co. of Arizona*, 899 F.3d 785, 791 (9th Cir. 2018) (citation omitted). The amount claimed by the plaintiff generally controls if made in good faith. *Ibarra*, 775 F.3d at 1197. Where "damages are unstated in a complaint or, in the defendant's view are understated," however, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id.* "[M]ere speculation and conjecture" based on unreasonable assumptions is not enough. *Id.* Yet defendants may "rely on reasonable assumptions," though they "need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the

---

[6] At the hearing on the motion to remand, both parties invoked argument and facts that were not affirmatively raised in the moving papers. This is relevant on the grounds that the parties are aligned as to the burdens at issue. Even the new argument presented failed to resolve the jurisdictional issues by a preponderance of the evidence.

[7] There is no dispute that minimal diversity and numerosity are satisfied.

1   evidence that the amount in controversy exceeds $5 million, the chain of reasoning and its

2   underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc*., 775 F.3d 1200,

3   1201 (9th Cir. 2015).  However, the Court should only "weigh the reasonableness of the removing

4   party's assumptions, not supply further assumptions of its own." *Harris*, 980 F.3d at 701.

5       As a threshold issue, United's notice of removal only needed "a plausible allegation that

6   the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89.  However,

7   evidence establishing the amount is required, whereas here "the plaintiff contests, or the court

8   questions, the defendant's allegation." *Id*.  To determine if a defendant has met its burden, a court

9   may consider "evidence outside the complaint, including affidavits or declarations, or other

10  summary-judgment-type evidence." *Ibarra*, 775 F.3d at 1197 (internal quotations omitted).  In

11  light of this standard, plaintiffs' suggestion that United improperly introduces evidence in

12  opposition is misplaced.

13      In the notice of removal, United calculates the amount in controversy at $16,984,100.

14  (Dkt. No. 1 at 12.)  This calculation includes statutory damages for violation of Section 233 of the

15  California Labor Code, damages for the violation of Section 234 of the California Labor Code, the

16  value of injunctive relief, and attorney's fees.  Each is addressed in turn.

17          **1.   Statutory Damages For Violation Of Section 233**

18      Plaintiffs' complaint seeks to recover damages for United's alleged auto-designation of kin

19  care leave in violation of Section 233 of the California Labor Code.  The statute permits an

20  employee to use half of his or her annually accrued sick leave days for certain family members.

21  Cal. Lab. Code. § 233.  Notably, amendments that became effective on January 1, 2021, require

22  that the designation of sick leave taken under the statute be made at the sole discretion of the

23  employee.  *Id*.  Pursuant to the statute, "[a]ny employee aggrieved by a violation of this section

24  shall be entitled to reinstatement and actual damages or one day's pay, whichever is greater, and to

25  appropriate equitable relief."  *Id*. § 233(d)

26      United's notice of removal calculates the amount of statutory damages for violation of

27  Section 233 at approximately $7,680,000.  This amount is based on several allegations in

28  plaintiffs' complaint.  First, plaintiffs allege that *all* instances of sick leave are designated as kin

United States District Court
Northern District of California

10

United States District Court
Northern District of California

care as a matter of practice and policy, effectively depriving the plaintiffs and the putative class of their ability to use half of their annual sick leave to care for qualifying family members. (Comp. ¶¶ 3, 26-34, 43-44.)  Second, plaintiffs further alleges that all putative class members accrue 96-hours of sick leave annually and that there are approximately 3,000 technicians in the class. (*Id*. ¶¶ 18, 36.)  United also contends that the average hourly wage for a technician is $40/hour.  Given that employees are entitled to one days' pay per each occurrence of a violation, and assuming that members of the class were denied kin care leave on two occurrences per year for an eight-hour work day, United contends that the amount of statutory damages is $7,680,000 ($40/hr x 16 hours/year x 4 years x 3,000 class members).

As a threshold, the amount in controversy is overstated to the extent it is based on a four-year time period.  Plaintiffs allege that the class period includes time since November 5, 2017. (Comp. ¶ 36.)  This period may have been included because plaintiffs' UCL claim is governed by a four-year limitations period.  *See* Cal. Bus. Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued").  However, the violation for section 233 is premised on the auto-designation of sick leave even though the employee has discretion to designate his or her sick leave.  This right only became effective as of January 1, 2021.  United removed this action on December 10, 2021, thus the relevant period is January 1, 2021 through December 10, 2021 (approximately one year).

United argues that the class period should extend beyond one year to include 18 months because the complaint alleges an ongoing violation.  The plaintiffs do not address the application of an 18-month period, however, the Court rejects its application here.  The Ninth Circuit has recognized that "the amount in controversy is not limited to damages incurred prior to removal." *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 414-15 (9th Cir. 2018).  As an example, *Chavez* recognized that "[i]f a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation[.]" *Id*. at 417.  While the complaint does seek to define the class through class certification, (Comp. ¶ 36), United has not offered any justification for an additional six months.  In the other case invoked by United to

suggest the extension of a future award, the proffered extension did not exceed the order on the motion to remand.  *See, e.g.*, *Castillo v. Trinity Servs. Grp.*, No. 1:19-cv-01013-DAD-EPG, 2020 WL 3819415 (E.D. Cal. July 7, 2020) (damage period included March 2020, however, the order was issued July 2020).  Such an open-ended request invites speculation and could lead to an overinflation of the amount in controversy.

The misstatement of the applicable class period also undermines United's data that there are approximately 3,008 class members.  The Declaration of Reiner Neurohr establishes that there were actually 2,284 technicians employed in California in 2021.  (Declaration of Reiner Neurohr ["Neurohr Dec."], Dkt. No. 30-2, ¶ 3.)  This is substantially lower than the 3,008 average relied upon from 2017 through 2021.  However, the misstatement of the class period may increase the average hourly rate during the relevant period.  As demonstrated by the Neurohr Declaration, the average hourly rate of pay in 2021 was $47.22.  (Neurohr Dec. ¶ 2.)[8]

Plaintiffs also question United's assumption that two violations of the kin care laws occurred during the relevant period.  Notably, "CAFA does not require Defendant 'to comb through its records to identify and calculate the exact frequency of violations, nor does it require

---

[8]  The Court notes that the Neurhor Declaration is deficient because it does not provide corroborating evidence or explain the process used to reach the numbers provided.  Courts have held that more is required of declarations used to prove the amount in controversy.  *See, e.g.*, *Contreras v. J.R. Simplot Co.*, No. 2:17-cv-00585-KHM-EFB, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017) ("[a] defendant's amount in controversy calculation is unjustified where the only evidence the defendant provides is a 'declaration by [its] supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages.'" (quoting *Garibay v. Archstone Communities LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013))); *Frias-Estrada v. Trek Retail Corp.*, 534 F. Supp. 3d 1058, 1065 (N.D. Cal. 2021) (remanding case where declaration did "not provide a definition of a work week" and failed to "describe [the] process for determining the number of employees, applicable pay rate, the $17.47 average hourly rate for the putative class, or number of hours worked per week"), *Farley v. Dolgen California LLC*, No. 2:16-cv-02501-KJM-EFB, 2017 WL 3406096, at *3 (E.D. Cal. Aug. 9, 2017) (finding that declaration on the average salary without any corroborating evidence was insufficient to meet defendant's burden under CAFA without any other corroborating evidence)*; Ramirez v. Prospect Int'l Airport Serv. Corp.*, No. 21-CV-06250-YGR, 2021 WL 5113167, at *4 (N.D. Cal. Nov. 3, 2021) (holding that declaration that "only recites the class size, workweeks, average wage, and average weeks worked per year" and is "silent as to its methods and calculations" is insufficient to show by preponderance of the evidence that CAFA's amount in controversy requirement is met).  This does not change the outcome of the Court's order, however, because as demonstrated, United does not meet its burden in proving that the amount in controversy requirement is satisfied.

United States District Court
Northern District of California

Defendant 'prove it actually violated the law at the assumed rate.'" *Danielsson v. Blood Centers of Pac.*, No. 19-cv-04592-JCS, 2019 WL 7290476, at *7 (N.D. Cal. Dec. 30, 2019) (citing *Arias*, 936 F.3d at 927).  In evaluating claims based on the labor code, district courts "in the Ninth Circuit have frequently held a violation rate between twenty and sixty percent to be reasonable when the plaintiff claims a 'pattern and practice' of violation." *Ogaz v. Honeywell Int'l, Inc.*, No. ED CV 21-739-JFW(KKx), 2021 WL 2822401, at *5 (C.D. Cal. July 7, 2021) (collecting cases); *Castillo*, 2020 WL 3819415 ("Following *Ibarra*, district courts have found violation rates between 25% to 60% to be reasonable based on 'pattern and practice' and 'policy and practice' allegations."); *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *6 (E.D. Cal. July 20, 2020) (same).

The complaint here alleges this type of systemic policy and practice.  As alleged, "United's sick leave policy auto-designates *every* use of sick leave as kin care sick leave[.]" (Comp. ¶ 3.)  Furthermore, "United's practice and policy of auto-designating all paid sick leave as kin care sick leave without permission or authorizations violates Labor Code § 233." (*Id.* ¶ 43.)  Plaintiffs also characterizes United's conduct as "systemic violation of the Labor Code[.]" (*Id.* ¶ 24.).  This systemic violation also exhausts Kin Care sick leave.  (*Id.* ¶¶ 3, 26, 31.)  Accordingly, two occurrences is conservative and reasonable in light of the allegations in plaintiffs' complaint.

Considering the foregoing, the adjusted amount of statutory damages as demonstrated by the evidence is approximately $1,725,607.68.[9]

### 2.  Statutory Damages For Violation Of Section 234

Plaintiffs' complaint also alleges that United improperly assigns "occurrences" or "points" to putative class members for use of sick leave *after the third time* an employee uses sick leave to care for family in a twelve-month period.  (Comp. ¶¶ 3-4, 19.)  Pursuant to Section 234 of the California Labor Code, a policy "that counts sick leave taken pursuant to Section 233 as an absence that may lead to or result in discipline . . . is a per se violation of Section 233." Cal. Lab. Code § 234.  Like Section 233, the remedy for violating Section 234 is either "reinstatement and

---

[9]  $47.22/hr x 16 hours/year x 1 year x 2,284 class members.  However, as noted above, the $47.22 amount and the number of class members has not been sufficiently supported.

actual damages or one day's pay, whichever is greater[.]"

United contends that the amount put in controversy is at least $4,225,280. The notice of removal and the declaration of Carlos Jiminez indicate that there were 13,204 attendance points driven by sick leave events from October 1, 2017 through December 8, 2021 at six out of twelve airports. (Declaration of Carlos Jiminez ["Jiminez Dec."], Dkt. No. 30-3, ¶ 2.) United reaches the $4,255,280 figure by multiplying the number of attendance points by the average daily rate for putative class members ($40/hour x 8 hours/day). Ultimately, this amount is overinclusive because it is not limited to the relevant period discussed above. In fact, it actually goes further than the complaint and includes data for October 2017 without any explanation. The Jiminez Declaration also does not provide any corroborating information for how this number was reached, including whether it is limited to violations of the Kin Care law after an employee uses a third day of sick leave to care for family.[10] More is required to support removal under CAFA as indicated above. Without a proper accounting of the number of violations, United has not demonstrated the reasonableness of its calculation. The Court treats this as a null value given the deficiencies.

### 3. Attorney's Fees

Plaintiffs do not dispute that considering attorney's fees is proper. Instead, plaintiffs argue that the attorney's fees are inflated, especially in light of plaintiffs' fee arrangement. Despite United's suggestion to the contrary, the Ninth Circuit has rejected a per se rule that "the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery" and noted that such fees are "limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Fritsch*, 899 F.3d at 796. A percentage approach may be appropriate in certain circumstances. *Id*. at 796 n.6. Nevertheless, United explicitly relies upon the 25% benchmark that has been disavowed. In any event, even if the 25% benchmark assumption was appropriate, the fee award would only be $431,401.92 (or 25% of $1,725,607.68).

---

[10] United's suggestion that plaintiffs do not challenge the reasonableness of the disciplinary points is not supported by the record. Plaintiffs' motion highlighted that "[d]isciplinary attendance points at United are assigned for a myriad of reasons . . . [and that] the Defendant provides no context or explanation as to how the attendance points value was discerned or what commonality these 'points' have relative to this claim." (Dkt. No. 23 at 15.) The Jiminez Declaration submitted in opposition does not address these concerns.

United States District Court
Northern District of California

1    As demonstrated below, this does not satisfy the amount in controversy.

2        **4.  Value Of Injunctive Relief**

3        Finally, United estimates that it would cost $1,682,000 to comply with the injunctive relief

4    that the plaintiffs seek in their complaint.  The Court does not need to evaluate the reasonableness

5    of this figure.  Even assuming that the amount is reasonable, this would only bring the amount in

6    controversy to $3,839,009.60 when statutory damages for violation of Section 233 and attorney's

7    fees are considered.  This is below the $5,000,000 to satisfy CAFA's requirement.

8                                                        ***

9        In light of the foregoing, United has failed to meet its burden that the amount in

10   controversy requirement has been satisfied.  Therefore, removal premised upon CAFA is

11   improper.

12   **IV.   CONCLUSION**

13       Finding that United has not demonstrated that removal is proper pursuant to CAFA or

14   ERISA complete preemption, the Court hereby **GRANTS** the motion to remand.  However, the

15   Court **DENIES** plaintiffs' request for costs and fees incurred as a result of the removal on the

16   grounds that the removal was not objectively unreasonable.  *See Lussier v. Dollar Tree Stores,*

17   *Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) (awarding attorney's fees is within the discretion of the

18   district court).  In light of the decision to remand, plaintiffs' remaining arguments concerning

19   abstention in favor of proceedings in state court are moot.  United's motion to dismiss is also

20   **DENIED AS MOOT**.

21       The Clerk is **DIRECTED** to **REMAND** the case to San Mateo County Superior Court and

22   close the file.

23       This Order terminates Docket Numbers 13 and 23.

24       **IT IS SO ORDERED.**

25   Dated: February 16, 2022

26                                                    _____
                                                     YVONNE GONZALEZ ROGERS
27                                                   UNITED STATES DISTRICT JUDGE

28

United States District Court
Northern District of California

15